LUCY A. BLUMENTHAL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64975.   Promulgated May 1, 1934.

*George E. Cleary, Esq.*, and *Eugene Blumenthal, Esq.*, for the petitioner.

*Thomas M. Mather, Esq.*, for the respondent.

**592**

STERNHAGEN: The Commissioner determined a deficiency of $7,541.47 in petitioner's individual income tax for 1929. He added to the net income which she reported on her individual return an amount of dividends on corporate shares which had theretofore been transferred by her in trust, and this she contests. The facts are all contained in a written stipulation, which, omitting the appended exhibits, is as follows:

1. On January 16, 1929, Lucy A. Blumenthal, the petitioner herein, being the owner of three thousand shares of the par value of $100. each of cumulative preferred stock of Sidney Blumenthal & Co., Inc., a New York corporation, registered in her name on the stock transfer books of Sidney Blumenthal & Co., Inc., obtained a loan in the' amount of $75,000 from Guaranty Trust Company of New York, and in consideration thereof, executed and delivered to said company a negotiable demand note in the sum of $75,000 carrying interest at 5½%; that said note was payable to said company; that at the same time said Lucy A. Blumenthal endorsed over to said company as collateral security for the payment of said loan the stock certificates for the aforesaid three thousand shares of cumulative preferred stock. Attached hereto and marked Exhibit No. I is a true copy of said note.

2. Said three thousand shares of cumulative preferred stock of Sidney Blumenthal & Co., Inc., had a value of approximately $300,000 on February 5, 1929. Such stock was listed on the New York Stock Exchange. Said three thousand shares of cumulative preferred stock of Sidney Blumenthal & Co., Inc., were acquired by the petitioner on December 21, 1928, by gift from her husband, Sidney Blumenthal.

3. It was the custom of Guaranty Trust Company of New York, in enforcing payment of any note secured by a pledge as collateral of stock listed on the New York Stock Exchange, to sell such collateral and apply the proceeds thereof in payment of the note before seeking to enforce payment from the maker of the note, and said note signed by Lucy A. Blumenthal was executed and delivered by her with knowledge of such custom.

4. The copy of the deficiency letter which was received by the petitioner from the Commissioner of Internal Revenue on or about February 27, 1932, with respect to her federal income tax for the year 1929 is attached to the petition herein as Exhibit I thereof and is a true copy of said deficiency letter.

5. Attached hereto and marked Exhibit No. II is a correct copy of a trust instrument duly executed and delivered on February 1, 1929, by Sidney Blumenthal as donor, husband of said Lucy A. Blumenthal, to Guaranty Trust Company of New York and Andre Blumenthal as trustees. Said trust so created and said trust instrument are still in full force and effect. The trust hereinafter referred to as Exhibit No. III was established by the petitioner for the purpose of providing for payment of the debt due Guaranty Trust Company of New York and providing for payment of the premiums on the life insurance on the life of Sidney Blumenthal described in Exhibit No. II, and providing income for herself and her children and capital for her children, all as set forth in said trust agreement.

6. Attached hereto and marked Exhibit No. III is a correct copy of the trust indenture duly executed and delivered on February 5, 1929, by Lucy A. Blumenthal, the petitioner herein as donor, to Sidney Blumenthal and Guaranty

Trust Company of New York as trustees. Said trust so created and the trust instrument are still in full force and effect.

7. On February 5, 1929, Lucy A. Blumenthal transferred, set over and assigned to Sidney Blumenthal and Guaranty Trust Company of New York as trustees under and in pursuance of the aforesaid indenture, referred to as Exhibit No. III, said three thousand shares of cumulative preferred stock of Sidney Blumenthal & Co., Inc., subject to the pledge thereof to Guaranty Trust Company of New York as collateral security for the payment of said note.

8. On February 5, 1929 and at the time when said Lucy A. Blumenthal set over, transferred and assigned to said trustees said three thousand shares of cumulative preferred stock, she also executed and delivered to Guaranty Trust Company of New York as trustee a power of attorney authorizing said trustee to transfer the said stock to its name as such trustee on the stock transfer books of Sidney Blumenthal & Co., Inc., and as such trustee to receive and collect all dividends thereon.

9. On February 5, 1929, there remained due and owing by said Lucy A. Blumenthal to the Guaranty Trust Company of New York, on account of the aforesaid note, the principal sum of $33,000, together with accrued interest thereon, the balance of said note having theretofore been paid by her.

10. The said Guaranty Trust Company of New York, the holder of said note, and the lender of the said amount of $33,000, was and is the same company which on February 1, 1929, and February 5, 1929, became the corporate trustee under the trust instruments hereinbefore respectively referred to as Exhibits Nos. II and III.

11. On February 5, 1929, there were unpaid and accumulated back dividends on said three thousand shares of cumulative preferred stock, amounting to $10.50 per share, a total of $31,500, none of which had then been declared or paid by said Sidney Blumenthal & Co., Inc.

12. After February 5, 1929, and prior to January 1, 1930, there were declared and paid to the said trustees, as dividends upon the said three thousand shares of cumulative preferred stock, the sum of $31,500 in full payment of the aforesaid unpaid and accumulated back dividends.

13. The said trustees, under the trust indenture, hereinbefore referred to as Exhibit No. III, paid over during 1929 said sum of $31,500 to Guaranty Trust Company of New York as holder of the aforesaid note in payment of interest due thereon in the amount of $1,303.69 and in payment of principal due thereon in the amount of $30,196.31.

14. After the 5th day of February, 1929, and prior to the 1st day of January, 1930, both dates inclusive, there were paid to the said trustees under the trust indenture, hereinbefore referred to as Exhibit No. III, by Sidney Blumenthal & Co., Inc., the sum of $15,750 as current dividends on the three thousand shares of cumulative preferred stock. The said trustees, under the trust instrument hereinbefore referred to as Exhibit No. III, disbursed said sum of $15,750 to the insurance companies enumerated in schedule "A" annexed to the aforesaid trust instrument referred to as Exhibit No. II, as and for current premiums upon said policies.

15. Said payment of $15,750 was made to said insurance companies under and pursuant to the provisions of the trust indenture hereinbefore referred to as Exhibit No. III.

16. The said trustees, under the trust indenture hereinbefore referred to as Exhibit No. III, filed a federal income tax return for the calendar year 1929 on form 1040 in which they reported as income taxable to them as trustees

the said dividends received during the calendar year 1929 in the amount of $47,250, and paid a federal income tax due thereon in the amount of $2,473.56.

17. The life insurance policies enumerated in schedule "A" annexed to the trust indenture hereinbefore referred to as Exhibit No. II had been irrevocably assigned by Sidney Blumenthal, the person insured thereunder, prior to February 5, 1929, to Guaranty Trust Company of New York as trustee under and pursuant to the trust indenture executed on February 1, 1929, hereinbefore referred to as Exhibit No. II, and were payable at maturity to said trustee. Sidney Blumenthal reserved no right to change the designation of beneficiaries in such policies.

18. Lucy A. Blumenthal and Sidney Blumenthal were during 1929 and are now living.

19. Lucy A. Blumenthal, the petitioner herein, was not entitled, under the trust indenture hereinbefore referred to as Exhibit No. III, to receive any of the income thereunder until all current premiums upon the policies referred to in the trust indenture, hereinbefore referred to as Exhibit No. II, had been fully paid and until the aforesaid debt of $33,000 to Guaranty Trust Company of New York had been fully paid with all interest due thereon. Except for any income remaining after such payments were made, no part of the income of such trust could be distributed to, or accumulated for the benefit of, the said Lucy A. Blumenthal.

20. Said Lucy A. Blumenthal had no power, under the aforesaid trust indenture, referred to as Exhibit No. III, either alone or in conjunction with any other person, to revest title in herself to any part of the corpus of the said trust.

21. None of the income of said trust received under the indenture, hereinbefore referred to as Exhibit No. III, was, or could be, applied under the terms of the said indenture to the payment of premiums on policies of life insurance on the life of said Lucy A. Blumenthal.

22. No part of the dividend income of $31,500 (representing the unpaid and accumulated back dividends on said three thousand shares of cumulative preferred stock) received by said trustees in 1929 under the trust indenture, hereinbefore referred to as Exhibit No. III, was received by said Lucy A. Blumenthal, nor could any part thereof in her discretion, either alone or in conjunction with any other person, be distributed or paid to her or accumulated for future distribution to her.

23. It is stipulated and agreed that Exhibits Nos. I, II and III hereof, and Exhibit I of the petition herein, may be introduced in evidence with the same force and effect as if the originals of the instruments, of which these Exhibits are copies, were put in evidence.

It is not entirely clear, either from the notice of deficiency or from the respondent's argument, what his conception is of the taxable nature of the transactions from which the alleged income results. Primarily he treats the facts as constituting a device for tax evasion, and, citing *Burnet* v. *Wells*, 289 U.S. 670, urges that as a tax-reducing contrivance it should not be permitted to succeed. Whatever doubt as to the result we might have if there were evidence before us of a controlling purpose to reduce or evade taxes, cf. *Commissioner* v. *Gregory*, 69 Fed. (2d) 809, the present record is devoid of such evidence. Although it is quite conceivable that the petitioner and her husband executed these trusts as a means of keeping down

their taxes, there is nothing in the evidence to indicate whether this is so, or, if so, whether this was the controlling purpose or merely incidental. We may not, therefore, approach the question, as the respondent suggests, as if to determine whether an obvious tax-evading device shall succeed, but proceed rather to determine whether the legal effect of what was done is to impute to the petitioner the income which the Commissioner has ascribed to her.

The petitioner in February 1929, being indebted for $33,000, for which she had posted collateral consisting of $300,000 worth of cumulative preferred shares upon which unpaid dividends had accumulated, made a trust. To the trustee she transferred the foregoing shares and imposed upon it the obligation to pay her $33,000 debt out of the accumulated dividends when paid. She further provided that out of current dividends the trustee should pay the premiums upon her husband's policies of insurance upon his own life. The trust was irrevocable and she had no further direct interest in it. The accumulated dividends, to the amount of $31,500, were, in 1929, declared and paid by the corporation to the trustee, and by the trustee were in turn used to pay the petitioner's indebtedness to the extent of $1,303.69 interest and $30,196.31 principal. Of current dividends, the trustee received $15,750, and this amount was paid by the trustee to the insurance company as premiums upon the husband's insurance policies.

The Commissioner has treated the amount of $31,500 and the amount of $15,750 as petitioner's income and has allowed her a deduction of $1,303.69 as interest paid by her. The petitioner argues that she is not chargeable with the amounts thus added to her income, nor does she seek the deduction for interest which the respondent has allowed.

1. It is contended by the petitioner that by the trust instrument which she executed the income from the shares was irrevocably put out of her reach, and that the fact that simultaneously she was as a practical matter relieved from all likelihood of demand for payment of her indebtedness did not serve to enlarge her income. We say " as a practical matter " because while the petitioner was not legally released from her obligation upon the note, she urges that the collateral of $300,000 was so far in excess of the amount of the debt as to make the possibility of her payment too remote to deserve serious consideration. We think, however, that her personal liability as that of a primary obligor can not be thus minimized. Her liability persisted despite the pledge of collateral security; and, whether at any given time the value of the collateral was large or small in relation to the amount of the debt, it does not serve to change her legal position as primary debtor.

The accumulated dividends as well as the current dividends were clearly income of the trust. They were entirely derived from the ownership of the shares upon which they were declared and paid. Were they to be held, say for unascertained persons, they would clearly be taxable income of the trust. The accumulated dividends, however, were by the terms of the instrument to be immediately used in the discharge of the indebtedness of Lucy Blumenthal. As to this amount, it seems clear that Lucy Blumenthal was just as much a beneficiary of the income of the trust as if by express direction it had been immediately turned over to her and she had used it in discharge of her debt. Since the accumulated dividends were to be distributed by the trust as quickly as received, they must be regarded as immediately distributable to her as beneficiary. By sections 161 (a)(2) and 162 (b), they are therefore included within her income and deductible from the gross income of the trustee.

It can not be said, as the petitioner suggests, that each payment made by the trustees to discharge Lucy Blumenthal's indebtedness was in effect a purchase by the trustee of additional corpus of the trust. The entire 3,000 shares were the property, first, of Lucy Blumenthal, and then, of the trustee. The effect of the payment of the debt was not to enlarge the corpus of the trust, but merely to release the shares from the lien of the pledge. This effect was produced as a corollary to the primary benefit to Lucy Blumenthal of discharging her debt. It is anomalous to say that, although she derived this clear benefit solely by virtue of the terms of the trust instrument, yet she was not a beneficiary of the trust. Had the trustee failed to use the accumulated dividends for her in this way, there is little doubt that she would have had an unchallengeable standing in a court of equity as a beneficiary in an attempt to enforce the terms of the trust.

The respondent's determination is therefore sustained as to the $31,500 and the correlative interest deduction.

2. The current dividends on the shares amounting to $15,750 were received by the trustee and were paid by the trustee to the several insurers as premiums upon the policies insuring the life of Sidney Blumenthal, petitioner's husband. The Commissioner treated this amount as petitioner's income and she objects. Her only relation to the insurance is that, by the terms of Sidney Blumenthal's trust, in which the policies were held, the trustee was required to pay the income of such trust to petitioner during her life. These current dividends were not income of Sidney's trust. They were income of Lucy's trust. But they were not distributable to Lucy at any time and were not to be used for payment of premiums on any policies

of insurance on her life. Clearly section 167 of the Revenue Act of 1928[1] is not applicable, and we can find no other specific provision taxing such income to her. The general provisions of the statute give no support to the Commissioner's determination, and as to the $15,750 the determination is reversed.

*Judgment will be entered under Rule 50.*

---

[1] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him, or where any part of the income of a trust is or may be applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (n), relating to the so-called " charitable contribution " deduction), such part of the income of the trust shall be included in computing the net income of the grantor.