CARL B. TUTTLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70558. Promulgated November 28, 1934.

*Ward H. Peck, Esq.*, and *William C. Rowland, C. P. A.*, for the petitioner.

*John D. Kiley, Esq.*, for the respondent.

Smith: This proceeding was brought to redetermine a deficiency in the income tax of the petitioner for the year 1930 in the amount of $9,217.66.

Several questions were settled by stipulation, leaving the sole issue whether or not certain income from a trust established by the petitioner on February 19, 1930, is taxable to him as settlor or to the beneficiary, Susie A. Tuttle, his wife, from whom he was separated, a suit for divorce being then pending.

The facts were stipulated substantially as follows:

The petitioner is a resident of Detroit, Michigan, and there has his office at the general offices of the S. S. Kresge Co., of which he is a stockholder, director, and treasurer. On January 1, 1930, and up to February 19, 1930, the petitioner was the owner, in his own right, of more than 30,000 shares of the common capital stock of that corporation, which he had acquired from time to time by purchase and stock dividends, over a period of 18 years.

On February 19, 1930, the petitioner was married but living apart from his wife, Susie A. Tuttle, from whom he had separated. A suit for divorce instituted in the Circuit Court for Wayne County, Michigan, on the 12th day of May 1927 was then pending. The only living issue of this marriage is a son, James Stuart Tuttle, born July 27, 1908.

On February 19, 1930, the petitioner entered into an agreement in writing with his wife and the Union Trust Co. as trustee whereby he agreed to deliver to the trustee 30,000 shares of common stock of the S. S. Kresge Co. to be held in trust for the purposes named. The agreement provided that the trustee should pay to the beneficiary the net income from such stock in regular monthly installments; that the trustee should execute a proxy to the petitioner, granting him complete voting rights in such stock; and that upon the death of the beneficiary the trust should cease. The trust instrument further provided that upon the death of the beneficiary subsequent to the death of the trustor, the entire corpus and income of the trust should pass to the son or his issue, but that in case the trustor and the son should survive the beneficiary the entire corpus and accumulated income of the estate should revert to the trustor, on the condition, however, that within 90 days from the date of her death he should agree in writing to execute a will by which the son should receive not less than one third of his father's entire estate and, in case of the son's physical incapacity, an income of not less than $10,000 a year. Upon the failure of the settlor to execute the agreement within the specified time the son was to receive the entire trust estate. If the beneficiary should die subsequent to the death of the son, the trustor should receive the

trust estate. If the beneficiary should survive both the trustor and the son, upon her death the trust estate should go to the trustee of the Detroit Community Trust, the net income to be devoted to named charitable institutions.

The beneficiary agreed that she would accept the covenants and agreements of the trust instrument in full and complete settlement, satisfaction, and discharge of her dower rights and all other rights in the petitioner's property and also:

* * * in full settlement, discharge and acquittance of any right * * * to support, maintenance, and/or alimony, temporary or permanent; and * * * of all rights, claims or interests * * * arising out of the pending divorce action, or arising out of any subsequent litigation for divorce or separate maintenance or otherwise * * *; it being the intention of the parties that this instrument is and shall be construed as a jointure and complete settlement, effective as of this date and operative forever under all circumstances and regardless of the outcome or disposition of the pending suit for divorce between the parties of the first and second parts.

Later, on the same day, a decree of divorce was granted by the Circuit Court at Detroit, Michigan. By that decree the marriage between the petitioner and his wife was dissolved. The decree also provided:

And it having appeared that the parties have consummated a settlement in full satisfaction of all property matters, matters of dower, inheritance, support, allowances, and temporary and permanent alimony between the parties hereto, to which reference is made, it is ORDERED, ADJUDGED and DECREED that the said payments shall be in full satisfaction and settlement of any and all dower or dower rights of the plaintiff in and to the property of the defendant, and that the said defendant hereafter hold and enjoy his property, both real and personal, free and clear, of and from all dower right or claim of plaintiff.

Thereafter, but prior to March 25, 1930, the petitioner assigned and transferred to the Union Trust Co., of Detroit, Michigan, as trustee for Susie A. Tuttle, 30,000 shares of the common capital stock of the S. S. Kresge Co. This stock was reissued in the name of the Union Trust Co. on March 25, 1930.

Prior to March 31, 1930, checks for a quarterly dividend, equal to 40 cents per share, were mailed at New York City, New York, to stockholders of record March 15, 1930, by the Chase National Bank, the dividend disbursing agent. In the dividend check issued to the petitioner was included the $12,000 dividend payable upon the 30,000 shares held by the Union Trust Co. On March 31, 1930, the petitioner issued his personal check to the Union Trust Co. in the sum of $12,000 to cover the dividend on the 30,000 shares.

The S. S. Kresge Co. paid additional dividends on its common stock during the year 1930, subsequent to March 31, as follows:

| | |
|---|---|
| June 30 | 40¢ per share |
| September 30 | 40¢ per share |
| December 31 | 40¢ per share |

(the latter available to stockholders only by check mailed by the dividend disbursing agent in New York City, New York, after 3:30 p. m., December 31, 1930). The Union Trust Co. received the June and September quarterly dividend checks, in the sum of $12,000 each, upon the 30,000 shares during the year 1930, and the dividend check issued December 31, 1930, was received by it on January 2, 1931.

The Union Trust Co., during the year 1930, paid to Susie A. Tuttle, out of the trust, in equal monthly installments of $3,960 each, the sum of $39,600. None of the money represented by the aforesaid checks was ever received by the petitioner.

The petitioner rests his case on the theory that the income of all trusts is taxable to the fiduciary or to the beneficiary under the provisions of section 161 of the Revenue Act of 1928, except where the trust is revocable (section 166), or where any part of the income may be distributed to the settlor, held for future distribution to him, or applied to the payment of premiums upon policies of insurance on his life (section 167).

The respondent contends that a trust established by the husband for the purpose of settling all property rights between the husband and wife, including her dower, alimony, and other rights, and providing that the income from the corpus of the trust shall be paid to the wife during her life and upon her death shall revert to the settlor under certain conditions, does not come within the purview of the statute cited. In support of his contention the respondent cites *Willcuts* v. *Douglas*, 73 Fed. (2d) 130. In that case the divorce decree required the husband to create a trust fund, the income of which should be paid to the wife " in lieu of all other alimony or interest in property or estate of the defendant." The court observed:

* * * The payment of alimony was ordered and this method prescribed by the court [in the divorce proceedings]. The payment of alimony in this form was a legal obligation which appellee was bound to meet. This took the form of " income." * * * It was taxable * * * to appellee because it directly benefited him by discharging a legal obligation he was bound to perform.

We are of the opinion that the above cited case is distinguishable upon its facts from the proceeding at bar. Here the petitioner established a trust fund which was to be in settlement of all property matters between them. The Circuit Court did not decree that the defendant should create a trust fund as in the *Douglas* case. It simply referred to a trust fund that had been set up by the petitioner and decreed " that the said payments shall be in full satisfaction and settlement of any and all dower or dower rights of the plaintiff in

and to the property of the defendant", the petitioner herein. The decree did not provide that the petitioner should pay his divorced wife any alimony. So far as the record shows the petitioner was not required to pay alimony. The court simply recognized the fact that the trust fund had been set up. The petitioner's divorced wife was thereafter precluded from "all dower right" or claim against the petitioner.

The facts in this case are substantially the same as those which obtained in *Reginald Brooks*, 31 B.T.A. 70, in which we held that the husband was not liable to income tax in respect of the income of the trust fund which had been set up for the benefit of a divorced wife. The facts are also similar to those which obtained in *James H. Hyde*, 31 B.T.A. 256. In that case we held that the petitioner was not liable to income tax upon the income of a trust fund which was paid over to his divorced wife pursuant to an agreement between them that she would bring a divorce action based on grounds of desertion only and would waive all claims against him for alimony, dower rights, support and maintenance. The stipulated facts in the case showed that the divorce decree "contained no provision for alimony or otherwise for the support or maintenance of the" divorced wife. We there said:

We think that no question can be raised but that a husband may make a valid gift of property to his wife and that thereafter the income from the donated property is the taxable income of the wife and not of the husband. We likewise think that it is plain that where a husband in good faith and not for the purpose of avoiding taxes creates a trust, the income from the trust fund to be paid currently to the wife, and the husband does not retain a power of revocation, the husband is not taxable upon income paid to the wife. We can not see how the rule is any different where the husband creates a trust fund for the benefit of his divorced wife. Nor do we think it makes any difference that the divorced wife in the proceedings at bar relinquished all claims for alimony, dower rights, maintenance, and support in connection with the creation of the trust fund. See *Reginald Brooks*, 31 B. T. A. 70. She did not thereby acquire the right to receive the income from the fund by purchase for a valuable consideration. *Helvering* v. *Butterworth*, *supra* [290 U. S. 365]. * * *

The petitioner is not liable to income tax on the income from the trust of February 19, 1930.

Reviewed by the Board.

> *Judgment will be entered under Rule 50.*

BLACK concurs in the result.

---

VAN FOSSAN, dissenting: I am unable to agree with the majority of the Board in this case. In my judgment the conclusion announced is contrary to well seasoned authority, *Willcuts* v. *Douglas*, *supra*, and is an open invitation to income tax evasion. This case and the recent Board cases on which it is based point the way

by which taxpayers may by indirection accomplish that which can not be done directly, i. e., the deduction of items of expense not recognized or permitted by the governing statute.

ADAMS agrees with this dissent.