ALBERT C. WHITAKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 73991.   Promulgated December 31, 1935.

W. M. Smith, *Esq.*, for the petitioner.
Samuel L. Young, *Esq.*, for the respondent.

866

OPINION.

STERNHAGEN: In the notice of deficiency the Commissioner held that the income of the trust was taxable to the petitioner because the trust was formed by the petitioner "to carry out an obligation and to assure that it would be carried out in the future." Without resort to the presumption that the Commissioner's determination is correct, there is ample evidence in the record to sustain it in fact. The agreement between husband and wife was made during their marriage, while the divorce proceeding charging desertion was pending, and two days before the uncontested hearing and entry of the decree. The husband, at the time of the agreement, recognized a marital obligation to the wife, and the agreement expressly recited its purpose to settle such obligation. Otherwise, the divorce court would have been called upon to provide in the decree " concerning the maintenance of the parties, or either of them " (West Virginia Code of 1932, Annotated, §4715). Although the petitioner testified that in the negotiations leading to the agreement he rejected any suggestion of alimony, his entire testimony indicates clearly that what he meant was that he would not obligate himself to pay a fixed amount, but would give his wife the dividends of the 1,200 shares, letting her take the chance of increase or diminution. This obviously did not affect the existence or nature of his obligation, but only the terms of its discharge. In consonance with the husband's obligation, the agreement recites alimony and suit money and the wife expressly accepts

the terms " as fair consideration in lieu of alimony." These would have no meaning if the husband were regarded as without a marital obligation for maintenance and support, or as creating a new obligation by the agreement.

The use of the word alimony necessarily implies a marital obligation, and when received by the wife the amount is not taxable income, *Gould* v. *Gould*, 245 U. S. 151; *Mary R. Spencer*, 20 B. T. A. 58; *Maud H. Bush*, 33 B. T. A. 628. The wife is entitled to it irrespective of the agreement, *Audubon* v. *Shufeldt*, 181 U. S. 575, and its inherent character persists through bankruptcy, where it is neither provable nor dischargeable as a debt. *Dunbar* v. *Dunbar*, 190 U. S. 340; *Wetmore* v. *Markoe*, 196 U. S. 68; *In re Hubbard*, 98 Fed. 710; *Turner* v. *Turner*, 108 Fed. 785. In *Dunbar* v. *Dunbar*, *supra*, where the maintenance of the wife was provided by a contract and not expressly by the decree, and as here the divorce was granted to the husband upon the uncontested ground of desertion, the Court clearly intimated that the contract could be held as in the nature of a decree. Said the Court:

Had the provisions of this contract, so far as contracting to pay money for the support of his wife is concerned, been embodied in the decree of divorce which the husband obtained from his wife in Ohio on the ground of desertion, the liability of the husband to pay the amount as alimony, notwithstanding his discharge in bankruptcy, cannot be doubted. *Audubon* v. *Shufeldt*, 181 U. S. 575. We are not by any means clear that the same principle ought not to govern a contract of this nature when, although the judgment of divorce is silent upon the subject, it is plain that the contract was made with reference to the obligations of the husband to aid in the support of his wife, notwithstanding the decree. The facts appearing in this record do not show a case of any moral delinquency on the part of the wife, and the contract, considering the circumstances, might possibly be held to take the place of an order or judgment of the court for the payment of the amount, as in the nature of a decree for alimony. We do not find it necessary, however, to decide that question in this case, because in any event we think the contract as to the support of the wife is not of such a nature as to be discharged by a discharge in bankruptcy.

\*        \*        \*        \*        \*        \*        \*

*Douglas* v. *Willcuts*, 296 U. S. 1, seems to support rather than detract from what has been said. There the trust was said by the Court to have been " manifestly made in contemplation of " the divorce suit, and was held to have been embodied in the divorce decree. The trust income was held to serve as a means of discharging the husband's duty, and the decree simply placed a sanction on the duty. The crucial holding was that the use of the trust income to discharge the existing marital duty was enough to justify the tax of the trust income to the husband. Here the decree is silent as to the contract and neither provides for nor prohibits alimony, but the circumstances bring both the decree and

the agreement into the same focus and it is just as clear that the trust income is used to discharge the marital duty and not merely a contractual duty voluntarily assumed. It is not the sanction of the decree which requires that the trust income be attributed to the husband, but the fact that the income discharges the husband's marital obligation.[1] Indeed it is possible that § 4715 West Virginia Code empowers the divorce court at any time to modify the decree to provide alimony if circumstances so require.

While there is reference in the contract to property rights and other claims which purport to be settled, there is no evidence upon which any segregation or allocation can be made whereby less than the full amount of trust income can be attributed to marital rights.

The petitioner relies on *Reginald Brooks*, 31 B. T. A. 70; 82 Fed. (2d) 173. While the statement of facts in that opinion is not in sufficient detail for an exact comparison of the trust agreement with that in the instant case, and seems to provide only for property rights with no reference to alimony, we can not approve the general rationale of the opinion so far as it is at variance with what we have said here. Of course, so far as it be in conflict with the reasoning of *Douglas* v. *Willcuts, supra*, it would in any event be without force. But that we need not discuss because it is involved in the appeal now pending. This is equally true of the Board's more recent opinions in *James H. Hyde*, 31 B. T. A. 256; 82 Fed. (2d) 174; and *Carl B. Tuttle*, 31 B. T. A. 782 (now on review, C. C. A., 6th Cir.).

Reviewed by the Board.

*Judgment will be entered for the respondent.*

---

[1] The treatment by the Supreme Court of the United States of *Douglas* v. *Willcuts*, 296 U. S. 1, as authority for its *per curiam* reversals, on December 9, 1935, of *Commissioner* v. *Stokes*, 79 Fed. (2d) 256; *Blumenthal* v. *Commissioner*, 76 Fed. (2d) 507; and *Schweitzer* v. *Commissioner*, 75 Fed. (2d) 702, is a clear indication that the scope of the rule is broader than an alimony trust sanctioned by a divorce decree.